AMERICAN RAILROAD COMPANY OF PORTO RICO, PLAINTIFF AND APPELLANT, *v.* WOLKERS, DEFENDANT AND RESPONDENT.

APPEAL from the District Court of San Juan, Section 1, for the Recovery of Money Wrongfully Collected.

No. 1199.—Decided April 6, 1915.

COLLECTION OF WHAT IS NOT DUE—QUASI-CONTRACT.—The matter of the payment of what is not due, as it was called formerly, or the collection of what is not due, as it is now termed, gives rise to the quasi-contract which the

Romans knew by the name of *solutio indebiti* and which has been the object of repeated legislation and jurisprudence.

ID.—QUASI-CONTRACT—RESTITUTION.—According to the law in force and to jurisprudence, in order to constitute the quasi-obligation to pay back money unduly collected, two requisites must be shown: (1) That it was unduly paid and (2) that the payment was made through error or mistake and not through mere liberality or any other sufficient cause.

ID.—ID.—ERROR OF FACT—ERROR OF LAW.—The error giving rise to the quasi-contract must be of fact and not merely of law.

ID.—KNOWLEDGE OF FACTS—RESTITUTION.—When payment of what is not due is made with a knowledge of the facts the restitution of the amount paid cannot be claimed.

The facts are stated in the opinion.

Mr. F. G. Pérez Almiroty for the appellant.

Mr. Eugenio Benítez Castaño for the respondent.

MR. JUSTICE DEL TORO delivered the opinion of the court.

This is an appeal from a judgment of the District Court of San Juan, Section 1, dismissing a certain complaint in an action for the recovery of money wrongfully collected.

Summarized, the complaint alleges the following:

1, 2 and 3. Citizenship, residence and capacity of the parties;

4. On March 24, 1912, Félix Wolkers met his death as the result of a railroad accident which occurred to one of the trains of the plaintiff which he was driving at that time as locomotive engineer;

5. In consequence of this the defendant, Justo Wolkers, as the lawful father of Félix, made a private claim against the plaintiff for the damages which he alleged he had suffered by the death of his son and entered into negotiations with M. Villard, the general manager of the plaintiff corporation, in which negotiations the latter was represented by its attorney, Pérez Almiroty, and Wolkers by his attorney, Benítez Castaño;

6. The plaintiff accepted as *bona fide* the affirmation of Wolkers to the effect that he was the only person who had a right to make such a claim and finally settled the claim by paying him the sum of $2,600;

7. Things being thus, and when the plaintiff believed the

matter finally closed, it was sued for the same cause by Tomás Sanjurjo as judicial defensor of the minors Aurelia and Marcelina Wolkers, who, in a judgment by default rendered by the District Court of San Juan in an action brought against Justo Wolkers, had been decreed to be the acknowledged natural children of Félix Wolkers;

8. When the plaintiff made the payment referred to in clause 6 it was not aware of the existence of such natural children of Félix Wolkers, the efforts which it made to ascertain whether said Félix Wolkers left any heirs except his father having resulted in the negative;

9. Defendant Justo Wolkers collected and received from the plaintiff the aforesaid sum at the time and for the reason stated without any right thereto;

10. The plaintiff made the said payment by mistake, being induced to do so by the statements of the defendant, who assured it that his son Félix had died intestate without leaving any legitimate or acknowledged natural children.

The complaint, which is verified, concludes with the prayer that judgment be rendered against the defendant for restitution to the plaintiff of the sum of $2,600 which he wrongfully collected from it without any right thereto, with legal interest; defendant to pay also the costs, expenses, disbursements and attorney's fees.

In his answer the defendant admitted allegations 1, 2, 3 and 4 of the complaint and denied the others, alleging as new matter that immediately after the death of Félix Wolkers the plaintiff approached the defendant as the father of Félix with an offer to settle; that the defendant went to the plaintiff's offices and not being able to reach an agreement with the plaintiff, employed Benítez Castaño as his attorney; that before the settlement was concluded the plaintiff, through its attorney, Pérez Almiroty, took steps to ascertain who were the heirs of Félix Wolkers and actually discovered that Wolkers died unmarried, leaving two natural children who had not been acknowledged at that time, notwithstand-

ing which the attorney advised the company to settle; that the said natural children of Félix Wolkers, now acknowledged as such by judgment, brought an action for damages against the plaintiff company for the death of their father and the company agreed to compromise said claim.

The answer, which is also verified, concludes with the prayer that judgment be entered dismissing the action with costs, disbursements and attorney's fees against the plaintiff.

On April 24, 1914, the case went to trial and the parties read their pleadings and introduced their evidence. On May 16, 1914, the court rendered judgment dismissing the complaint without special imposition of costs.

After analyzing the evidence introduced and reciting the circumstances of the case and the grounds on which he based his decision, the trial judge, Hon. Córdova Dávila, expressed himself in his opinion as follows:

"This testimony (referring to the testimony of the attorney for the plaintiff corporation, Pérez Almiroty) shows plainly that when it settled the claim of Justo Wolkers the plaintiff corporation knew that there were some minors who were regarded as the children of Félix Wolkers, although they had not yet been acknowledged at that time. Therefore, the conclusion must be reached that in paying the amount demanded by Justo Wolkers the corporation did so knowing that it confronted a prospective suit in case the said minors should obtain a judgment holding them to be the natural children of Félix Wolkers, deceased. The plaintiff lays great stress upon the statement made by the defendant in the deed of settlement to the effect that his son Félix died intestate without leaving any legitimate or acknowledged natural children, and that therefore he was the only person entitled to set up a claim against the company for damages. However great the bad faith of Justo Wolkers, which we are far from defending, the plaintiff corporation had knowledge that there were some children who were considered the children of Félix Wolkers and it could not be deceived by the defendant's statement. But this is not all. In the very testimony given by Pérez Almiroty as attorney for the plaintiff immediately after the testimony transcribed above the following appears:

" 'Do you mean to say that in view of the facts of this case you could rely upon winning this suit for the company?' 'Yes, sir; but instead of spending $1,000 in the suit we will give that amount to the minors; that is why this offer has been made, especially when the company has already paid $2,000 to Justo Wolkers.'

"The record shows that the plaintiff corporation paid $2,400 to the natural children of Félix Wolkers, including attorney's fees. In justification of the action of the company in offering $1,000 to the minors Clemente and María Wolkers as a compromise, Peréz Almiroty says that this sum is offered for the reasons stated, *especially when the company has already paid $2,000 to Justo Wolkers.* This shows that in offering this amount the corporation took into account the sum of $2,000 already paid to Justo Wolkers, and this statement was made undoubtedly for the purpose of influencing the mind of the court to consider the amount already paid by the plaintiff. As this record has been presented in evidence, we must point out that this was one of the arguments employed by Llorens Torres to convince us that the compromise was reasonable, and that, as a matter of equity, the payment already made by the company should carry some weight with the court. In our opinion, the plaintiff company has no right to reclaim a sum whose payment it used as an argument for the purpose of emphasizing to the court the payment made by it, which payment, as is shown by the testimony of Pérez Almiroty, it took into account in offering $1,000 to the children of Félix Wolkers as a compromise.

*          *          *          *          *          *          *

"Judgment in this case will be for the defendant, inasmuch as from a legal point of view we understand that the plaintiff has no right to complain, because it paid out a sum of money with knowledge of the consequences to which it exposed itself in so doing; it used the payment of this sum as an element of evidence in the record, and it included the payment of the said sum in its calculations in offering the minors a specified amount as a compromise."

We have considered the evidence introduced and are of the opinion that the weight given thereto by the trial court and the conclusion reached by it in the judgment are correct.

The matter of the *payment of what is not due,* as it was called formerly, or the *collection of what is not due,* as it is now termed, is deeply rooted in the science of law. It gives origin to the quasi-contract which the Romans knew by the

name of *solutio indebiti;* it was regulated by the *Siete Partidas;* it occupies the second section of Title XVI of the Spanish Civil Code, which treats of obligations contracted without agreement, and sections 1796 to 1802 of the Revised Civil Code; it has been studied and explained by the courts and commentators.. See the judgments of the Supreme Court of Spain cited in 2 Pantoja's *Repertorio de la Jurisprudencia Civil,* 1838 to 1882, pages 266–267, and in 1 *Repertorio de la Jurisprudencia Civil,* published by the Review of Legislation and Jurisprudence, pages 383–384, and also the judgment of December 23, 1903, reported in 12 *Jurisprudencia del Código Civil,* by V. A. M., page 70 *et seq.* See also the judgment of this court in the case of *Arandes* v. *Báez,* 20 P. R. R., 364, and the following works: 12 Manresa's Commentaries on the Civil Code, 587 *et seq.;* 4 Falcon's Civil Code, 420 *et seq.;* 2 Pedregal's Civil Code, 830, and 1 Giorgi's *Teoría de las Obligaciones,* 30 *et seq.*

According to the law in force and to jurisprudence, in order to constitute the quasi-obligation to pay back money unduly collected two requisites must be shown, viz., (1) that it was unduly paid and (2) that the payment was made through error or mistake and not through mere liberality or any other sufficient cause. The error giving rise to the quasi-contract must be of fact and not merely of law.

If any right of action existed against the plaintiff corporation on account of the death of engineer Félix Wolkers, such right was vested in his heirs. In the present case the plaintiff understood that the real heir of Félix Wolkers was his lawful father, Justo Wolkers, and settled the matter with him. After the settlement was made a court rendered judgment declaring certain persons to be the acknowledged natural children of Félix Wolkers. According to the law, these persons, the acknowledged natural children, and not the lawful father, were the true heirs. The company knew this and when it was sued by them offered and effected a compromise with them.

This case is not one of a fictitious debt or of one previously paid. The plaintiff company voluntarily recognized the obligation it was under to indemnify the heirs of its engineer who was killed while complying with the duties of his position. The abnormal feature of this case consists in the payment by the company in the first place to a person whom it believed to be the heir but who proved not to be.

Defendant Wolkers stated in the contract of settlement "that his said son died intestate without leaving any legitimate or acknowledged natural children and that therefore he is the only person having the right to set up a claim against the said company," and in the testimony at the hearing he said: "When that settlement was made it was rumored that my son had those children, but that they were not acknowledged and had no mother. I was asked whether they had a mother alive and if he were married, and I answered no. That was absolutely all I was asked. It was rumored that those children were theirs, but as they were not married I knew it only by hearsay; I had no evidence that they were his children."

If the children were not really legitimate and had not been acknowledged as natural children, then the defendant was the real heir. There is no direct evidence in the record to show that the defendant had any knowledge at the time the settlement was made that the natural children referred to had been duly acknowledged by their father, and it is a matter of fact that the children had to resort to the court after the settlement was effected in order to secure their acknowledgment.

We have seen that the plaintiff railroad company had knowledge of the existence of the natural children when it settled with the defendant. It may be said that the company was in the same position as the defendant. Both knew that there were persons who were said to be the children of Félix Wolkers, but both acted on the supposition that said persons were not entitled to inherit because they were

not legitimate children and had not been acknowledged as natural children.

In such circumstances can it be concluded that in this case there was a collection of what was not due under an error of fact?

In our opinion the existence of the second of the requisites prescribed by law in order to demand restoration of the money unduly paid has not been proved. The plaintiff company cannot allege that it acted in ignorance of the true facts. If there were children, they could resort to the courts and prove their filiation and in that case they, and not the lawful father (sec. 909 of the Revised Civil Code), would be the heirs of the deceased engineer. The company cannot plead ignorance of the law.

If, then, the company paid the defendant with knowledge of the facts, it cannot now repudiate its own acts and ask for the restitution of the amount paid in such circumstances. Besides, as the trial court stated in the opinion on which it based the judgment appealed from, when the plaintiff company finally compromised with the true heirs of Félix Wolkers and applied to the court for its approval of the settlement because the said heirs were minors, the company pleaded the fact of the payment made to the defendant for the purpose of estimating the amount of the indemnity, and the court took it into account in approving the contract in the terms proposed. We do not wish to be understood as saying that the court acted lawfully in doing this, but we mention the fact because it is a further bar to recovery in the action brought by the plaintiff in this case.

For the foregoing reasons the judgment appealed from should be

*Affirmed.*

Chief Justice Hernández and Justices Wolf, Aldrey and Hutchison concurred.